**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>v.<br><br>Charles William Bunnell,<br><br>                Defendant. | No. CR-14-00119-001-PHX-DGC<br><br>**ORDER** |

Defendant Charles Bunnell, who has elected to represent himself in this action, has filed several motions: a motion to dismiss the indictment (Doc. 46), a motion to suppress his prior arrest record (Doc. 47), a motion to exclude evidence from his hotel room and car (Doc. 48), a motion to dismiss Count I of the indictment (Doc. 49), and a motion to "exclude" (Doc. 64). The motions are fully briefed, and no party has requested oral argument. For the reasons set forth below, the Court will deny the motions.

Defendant has also filed a letter seeking advice on how he might file a lawsuit against the FBI. Doc. 68. He has also mailed a number of proposed subpoenas without using proper forms. The Court will address Defendant's letter and subpoena requests at the status hearing scheduled for September 2, 2014.

**I.    Motion to Exclude.**

Defendant moves to "exclude" the government's responses to his motions, arguing that the responses are untimely "according to the rules of Motion, Response, and Reply." Doc. 64. Defendant served his motions on July 9, 2014. Local Rule of Criminal

1 Procedure 12.1(a) looks to Local Rule of Civil Procedure 7.2(c) for matters concerning motions, and Rule 7.2(c) allows 14 days for a response. Federal Rule of Criminal Procedure 45(c) granted the government three additional days because Defendant's motions were served in the manner provided under Federal Rule of Civil Procedure 5(b)(2)(E).

The government thus had fourteen days to respond under Local Rule 7.2(c) and an additional three days under Federal Rule of Criminal Procedure 45(c). Under Federal Rule of Criminal Procedure 45(a), the day Defendant filed his motions is excluded from the computation, making the responses due on July 26, 2014. Because that day was a Saturday, Rule 45(a) gave the government an extension until Monday, July 28, 2014. The government timely filed its responses on July 23 (Doc. 50), July 24 (Doc. 51), and July 25, 2014 (Doc. 52).

**II.     Motions to Dismiss.**

   **A.     Relevant Facts.**

The Indictment charges Defendant with attempt to commit sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1), and 1594(a), and attempt to engage in interstate kidnapping in violation of 18 U.S.C. § 1201(a)(1) and (d). Doc. 9. The government alleges that on January 25, 2014, Defendant arrived in Arizona to purchase a sex slave. At approximately 10 a.m., two undercover employees ("UCEs") had breakfast with Defendant. One of the UCEs inquired whether Defendant brought the drug Scopolamine to Arizona. Defendant replied that he had brought the drug with him and that he planned to administer it to the sex slave so that he would not have to restrain her on the drive back to California. Defendant explained that the drug is an extremely potent inhalant that takes away a person's willpower and ability to resist. He also explained that the drug can be extremely dangerous because it is possible to overdose.

Later, at the warehouse where Defendant believed his sex slave was being held, Defendant paid money to a UCE and was promptly arrested. While at the scene, FBI

1 Special Agent ("SA") Ryan Blay informed Defendant that federal agents would be executing search warrants on his vehicle and hotel room and asked Defendant whether there was anything in either location that could harm them. Defendant indicated that there was a container of Scopolamine in the glove box of his vehicle. A search of the vehicle uncovered a Scopolamine applicator in the passenger compartment of the vehicle and a bottle of Scopolamine in the trunk. Federal agents also found restraints, zips ties, rope, a sex toy, bondage equipment, and a video camera in Defendant's suitcase.

**B.     Legal Standard.**

For purposes of a motion to dismiss, allegations in the indictment must be taken as true. *United States v. Renzi*, 861 F. Supp. 2d 1014, 1021 (D. Ariz. 2012). Arguments raised in a motion to dismiss that rely on disputed facts should be denied. *United States v. Tawahongva*, 456 F. Supp. 2d 1120, 1125 (D. Ariz. 2006).

**C.     Motion to Dismiss Count I of the Indictment.**

Defendant argues that he cannot be convicted of conspiracy to commit sex trafficking because it is factually impossible to conspire with a government agent. Doc. 49 at 1. Defendant's argument misses the mark, however, because he is not charged in Count I with conspiracy to commit sex trafficking; he is charged with attempted sex trafficking by force, fraud, or coercion. Doc. 9. To prove Defendant attempted to engage in trafficking, the government need not show that Defendant conspired with anyone. The government must prove that Defendant intended to commit the underlying offense and "took some overt act that was a substantial step toward committing that crime." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1192 (9th Cir. 2000) (en banc).

The government argues that Defendant's drive from California to Arizona with Scopolamine and a suitcase full of restraints and sex paraphernalia constituted an overt act that was a substantial step toward committing a sex trafficking crime. Defendant offers non-criminal explanations for the items found in his suitcase, the drugs found in his car, and his trip to Phoenix, but these are factual matters to be resolved by the jury at trial. The Court cannot conclude Defendant was improperly charged.

Defendant also contends that his intended "private use" of the sex slave cannot be considered a "commercial sex act" as required by 18 U.S.C. § 1591(a). Doc. 49 at 1. Defendant argues that he was clear with the UCEs that he intended to use the sex slave for "private use only" and not for commercial gain. *Id*.

The relevant statute defines a "commercial sex act" as "any sex act, on account of which anything of value is given or received by any person." 18 U.S.C. § 1591(e)(3). Courts have construed this language broadly to uphold convictions of persons who purchase sex slaves. *See, e.g.*, *United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006) (stating that "in the most sterile terms, the statute covers the situation where a U.S. citizen engages in a commercial transaction in exchange for sex acts"); *see also United States v. Jungers*, 702 F.3d 1066, 1072 (8th Cir. 2013) (holding that "obtaining . . . a person for the purpose of a *commercial sex act*" under section 1591 "readily includes the actions of a purchaser whose sole purpose is obtaining a child for sex.") (emphasis in original). Because it appears that Defendant attempted to exchange money with the UCEs for a sex slave, Defendant was properly charged with attempted sex trafficking whether or not he intended "private use only."

### D.     Motion to Dismiss the Indictment.

Defendant makes four arguments in support of this motion. First, he argues that the indictment should be dismissed because law enforcement officers questioned him post-arrest before giving him a *Miranda* warning. Doc. 46 at 1-2. After Defendant was arrested, SA Blay informed Defendant that federal agents would be executing search warrants on his hotel room and car and asked whether there was anything that could harm the agents in either location. Defendant allegedly indicated that there was a container of Scopolamine in the glove box of his vehicle. The government argues that SA Blay's line of questioning falls under the public safety exception to *Miranda*, which permits officers to question an individual if there is an objectively reasonable need to protect the police or public from immediate danger. *See United States v. Carillo*, 16 F.3d 1046, 1049 (9th Cir. 1994).

In determining whether the public safety exception to *Miranda* applies, the Court asks "whether there was an objectively reasonable need to protect the police or the public from any immediate danger." *United States v. Brady*, 819 F.2d 884, 888 n.3 (9th Cir. 1987) (quoting *New York v. Quarles*, 467 U.S. 649, 655 (1984)). Because Defendant had previously informed UCEs that he possessed a potent narcotic, Scopolamine, and that the drug could be fatal if inadvertently inhaled, the Court concludes that the public safety exception applied to SA Blay's pre-*Miranda* question.

Second, Defendant contends that the indictment should be dismissed because he was denied the opportunity to make a phone call after his arrest. Doc. 46 at 1-2. Defendant cites no authority in support of his contention that the indictment should be dismissed on this basis, nor does he cite any authority suggesting that he was entitled to a phone call. While the government agrees that Defendant was precluded from making a telephone call until his initial appearance on January 27, 2014, the government argues that law enforcement had legitimate concerns that Defendant would direct a third party to destroy evidence at his California home if he was permitted to call. Doc. 51 at 7. The Court finds the government's position reasonable and will not dismiss the indictment on this basis.[1]

Third, Defendant asserts that the government actions constituted entrapment. Doc. 46 at 2-3. "To establish entrapment as a matter of law, the defendant must point to undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by trickery, persuasion, or fraud of a government agent." *U.S. v. Williams*, 547 F.3d 1187, 1197 (9th Cir. 2008) (quoting *United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir. 1986)). This is a subjective inquiry into whether "the Government's deception actually implants the criminal design in the mind of the defendant." *United States v. Russell*, 411 U.S. 423, 436 (1973). The defense of

---

[1] The government asserts that while Defendant was being processed on January 25, 2014, he asked a law enforcement officer to contact one of his friends in Los Angeles and tell her that "it was a set up." Doc. 51 at 7. Defendant does not deny that he made this request of a law enforcement officer.

- 5 -

1  entrapment fails "[i]f the defendant is predisposed to the crime." *Smith*, 802 F.2d at
2  1124. Because the parties dispute facts critical to the entrapment defense, including facts
3  required to determine whether Defendant was predisposed to the crime of sex trafficking,
4  the Court cannot resolve this issue in a motion to dismiss. *See United States v. Freed*,
5  401 U.S. 601, 607 (1971) (refusing to consider an entrapment defense in a motion to
6  dismiss because entrapment "is an issue for the trial, not for a motion to dismiss"); *United*
7  *States v. Fadel*, 844 F.2d 1425, 1430 (10th Cir. 1988) (explaining that pretrial resolution
8  of the entrapment defense is not favored because "the defense of entrapment is
9  intertwined with the issue of intent and is typically based upon credibility determinations,
10 an area traditionally reserved for jury resolution"). Defendant may request an entrapment
11 instruction at trial if warranted by the evidence.

12 Fourth, Defendant argues that the government's case rests on "assumptions,
13 exaggerations, and lies." Doc. 46 at 3. The Court will construe this argument as alleging
14 prosecutorial misconduct based on asserting improper inferences from the facts.
15 Defendant provides one example: a conversation he had with a UCE in which he
16 requested the UCE to "locate a young lady" who lived in Phoenix. Doc. 46 at 3.
17 Defendant argues that the government unreasonably inferred from this conversation that
18 Defendant was seeking to acquire the woman via kidnapping. He asserts that such an
19 inference is ridiculous because there could be dozens of reasons why he wanted the UCE
20 to locate the young woman. Doc. 46 at 4. Defendant's characterization of the
21 conversation omits a crucial fact. Before Defendant made his request of the UCE, the
22 UCE told Defendant that he represented a group that kidnaps females to sell as slaves.
23 The government's inference is not unreasonable and does not rise to the level of
24 prosecutorial misconduct. *See United States v. Sullivan*, 522 F.3d 967, 982 (9th
25 Cir. 2008) (no prosecutorial misconduct when reasonable inferences are argued).

26 **III.    Motion to Suppress Prior Arrest Record.**

27 Defendant seeks to suppress the record of his 1989 arrest in California. Doc 47.
28 Defendant alleges that although he was married at the time of the arrest, he had a non-

sexual "friend" who knew he was married and with whom he would enact his fetish fantasies. *Id*. at 1. After approximately three months, the "friend" changed her mind and began pressuring Defendant to leave his family for her. *Id*. When Defendant refused to abandon his family for the "friend" with whom he would simulate rape and other fetish scenarios, the "friend" became angry and filed criminal charges against him. *Id*. at 2. After Defendant consulted with his lawyer, he agreed to plead guilty and receive three years' informal probation in order to avoid a six- to nine-month term of pre-trial imprisonment. *Id*.

Defendant's motion is premature. The government may seek admission of Defendant's prior conviction or arrest under Federal Rules of Evidence 404(b) or 413. Both rules require the government to give Defendant advance notice of its intentions, and the government provided such notice after the briefing on this motion was complete. *See* Doc. 67. The Court has set a deadline for motions in limine. Doc. 58. If Defendant wishes to challenge this evidence in light of the government's specific notice, he should file a motion in limine before the deadline. The Court cannot determine whether evidence is inadmissible until it understands the context in which the evidence will be offered, and that context presumably will be clearer in light of the government's notice.

**IV.    Motion to Exclude Evidence from Hotel and Car.**

Defendant's motion to exclude evidence found in his hotel room and car merely repeats facts and arguments related to the alleged *Miranda* violation discussed above. Doc. 48. As already noted, the Court finds that SA Blay's question fell within the public safety exception to *Miranda* and therefore was not improper. *See Carillo*, 16 F.3d 1049.

The Court will also deny the motion to the extent Defendant challenges the validity of the searches of his hotel room and car. Defendant has made no showing that the warrants, their supporting affidavit, or the means of their execution were defective.

**IT IS ORDERED**:

1.    Defendant's motion to dismiss this case (Doc. 46) is **denied**.

2.    Defendant's motion to suppress prior arrest record (Doc. 47) is **denied**

        **without prejudice**.

3. Defendant's motion to exclude evidence from hotel and car (Doc. 48) is **denied**.

4. Defendant's motion to dismiss Count I of the indictment (Doc. 49) is **denied**.

5. Defendant's motion to exclude (Doc. 64) is **denied**.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from July 9, 2014.

        Dated this 29th day of August, 2014.

_____
David G. Campbell
United States District Judge