**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-14-00119-001-PHX-DGC |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Charles William Bunnell, | |
| Defendant. | |

Defendant Charles Bunnell, who has elected to represent himself in this action, has filed a motion to dismiss the indictment. Doc. 70. The motion is fully briefed (Docs. 70, 75, 97) and no party has requested oral argument. For the reasons set forth below, the Court will deny the motion.

**I.     Background.**

Defendant is charged with attempt to commit sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1), and 1594(a). He is also charged with attempt to engage in interstate kidnapping in violation of 18 U.S.C. § 1201(a)(1) and (d).

Defendant's arrest resulted from an undercover operation by the Federal Bureau of Investigation ("FBI"). The operation began after the FBI discovered that individuals in the United States were seeking to purchase foreign sex slaves from a Malaysian organization. Doc. 75 at 2. The FBI took over the website of the Malaysian organization, mimicked the profile used by the organization, and posted advertisements on the same website (www.collarme.com). *Id*. The FBI advertised a slave auction with

1   18-26 year old Asian, Hispanic, and Eastern European females available for sale.  *Id*.
2   The FBI also sent emails to those who previously had expressed an interest in purchasing
3   sex slaves through the Malaysian organization, including Defendant.  *Id*.

4   On August 23, 2013, Defendant responded to the FBI's email and expressed an
5   interest in the slave auction.  *Id*. at 2-3.  Defendant provided his phone number and, over
6   the next few months, communicated with the FBI via email and phone about the auction.
7   *Id*. at 3.  Defendant was unable to attend the auction in December 2013, and sent a text
8   message to the FBI's undercover employees ("UCEs") requesting a "direct purchase" of
9   one of the kidnapped females.  *Id*.

10  The government alleges that Defendant arrived in Arizona on January 25, 2014 to
11  purchase a sex slave.  *Id*. at 2.  Defendant had breakfast that morning with two UCEs.
12  Defendant told the UCEs that he had brought the drug Scopolamine and planned to
13  administer it to the sex slave so that he would not need to restrain her during his drive
14  back to California.  *Id*.  Defendant explained that the drug is an extremely potent inhalant
15  which takes away a person's willpower and ability to resist, and that the drug is
16  dangerous due to the possibility of overdosing.  *Id*.  Later that same day, Defendant and
17  the UCEs travelled to a warehouse where Defendant believed the sex slave was being
18  held.  Defendant paid the UCEs $200 and was arrested.

19  Following the arrest, FBI Special Agent Ryan Blay advised Defendant that federal
20  agents would be executing search warrants on his vehicle and hotel room and asked
21  whether there was anything in either location that could harm them.  Defendant said there
22  was a container of Scopolamine in the glove box of his vehicle.  When agents searched
23  the vehicle, they found a bottle of Scopolamine and an applicator, as well as restraints,
24  zips ties, rope, a sex toy, bondage equipment, and a video camera.

25  The government asserts that it knew of Defendant's interest in sex slaves because
26  he was identified in a 2012 investigation into the Malaysian organization.  Doc. 75 at 3-4.
27  Defendant allegedly used the email address godofbondage@novanillahere.com and the
28  username "Master Chuck" to express his interest in purchasing a non-consensual sex

slave. *Id*. at 4. Defendant communicated with the Malaysian organization, stating that he wanted a "slave to own" and asserting that he had both owned and trained slaves in the past. *Id*. The government alleges that Defendant did not purchase a slave in 2012 because the organization could not provide a woman that met his physical specifications.

During the undercover sting operation, Defendant admitted to the FBI that he had been involved in slave trading in the past. *Id*. Defendant told the UCE that he "had involuntaries in the past and found them to be quite gratifying." *Id*. He also told the UCE that he owned a "retraining facility" in Nevada that could hold 12-18 pieces of "property." *Id*. Defendant asserted that his slave trading activities occurred at least 15 years ago, that he engaged in them for approximately 12 years, and that no one had "ever got[ten] out." *Id*. at 4-5. Defendant claimed that he retrained women by placing them on an exam table with stirrups and getting "in there with a speculum" to convince the women that a device had been placed inside. *Id*. at 5. During an in-person meeting on October 18, 2013, the Defendant provided the UCEs with tips on how to avoid law enforcement detection, noting that "I'm somebody who has done the business, and done it fairly successfully for quite some time, and, you know, I'm still out in the public. And I haven't been caught." *Id*.

**II.     Legal Standard.**

For purposes of a motion to dismiss, the well-pled factual allegations in the indictment are taken as true and read in the light most favorable to the nonmoving party. *United States v. Milovanovic*, 678 F.3d 713, 720 (9th Cir. 2012); *United States v. Renzi*, 861 F.Supp.2d 1014, 1021 (D. Ariz. 2012). Where a motion to dismiss is based on arguments that raise disputed facts, the motion should be denied. *United States v. Tawahongva*, 456 F.Supp.2d 1120, 1125 (D. Ariz. 2006).

**III.    Analysis.**

    **A.      Entrapment.**

Defendant's motion primarily focuses on the defense of entrapment, which was addressed and resolved in Defendant's previous motion to dismiss. Doc. 72 at 5. "To

establish entrapment as a matter of law, the defendant must point to undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by trickery, persuasion, or fraud of a government agent." *United States v. Williams*, 547 F.3d 1187, 1197 (9th Cir. 2008) (quoting *United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir. 1986)). Although Defendant asserts various facts in his motion – that the government advertised an illegal act, contacted Defendant and invited him to participate, sought out Defendant because of his "talents," and intimidated him into paying money – many of these facts are disputed by the government. As noted above, disputed facts cannot provide a basis for dismissing charges pre-trial. *See United States v. Freed*, 401 U.S. 601, 607 (1971) (refusing to consider an entrapment defense in a motion to dismiss because entrapment "is an issue for the trial, not for a motion to dismiss"); *United States v. Fadel*, 844 F.2d 1425, 1430 (10th Cir. 1988) (explaining that pretrial resolution of the entrapment defense is not favored because "the defense of entrapment is intertwined with the issue of intent and is typically based upon credibility determinations, an area traditionally reserved for jury resolution"). Defendant may request an entrapment instruction at trial if warranted by the evidence.

### B. Violations of the Constitution.

Defendant claims that the government conduct in this case was unconstitutional, but does not identify the portion of the Constitution that allegedly was violated. Doc. 70 at 2. Defendant instead argues that the government targeted individuals who would not commit the crime without the temptations offered by the government. *Id.* This argument appears to be essentially the same as the entrapment argument addressed above, and is rejected for the same reasons.

### C. Outrageous Government Conduct.

Defendant argues that the government engaged in outrageous conduct. Dismissal for outrageous government conduct is appropriate only "where the government's conduct is 'so grossly shocking and so outrageous as to violate the universal sense of justice.'" *United States v. Slaughter*, 891 F.2d 691, 695 (9th Cir. 1989) (quoting *United States v.*

*Citro*, 842 F.2d 1149, 1152 (9th Cir. 1988)). Dismissal of indictments premised on outrageous government conduct has been "limited to extreme cases in which the government's conduct violates fundamental fairness." *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003). The Court must credit the government's allegations of fact as true for the purposes of a motion to dismiss. *Milovanovic*, 678 F.3d at 720.

The outrageous government conduct defense is based on the due process clause of the Fifth Amendment and applies only in the narrowest of circumstances. *United States v. Russell*, 411 U.S. 423 (1973). Those circumstances exist when "the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." *Id*. at 431-32. The Ninth Circuit has rejected the defense in a wide variety of cases. *See, e.g.*, *United States v. Cuellar*, 96 F.3d 1179 (9th Cir. 1996) (finding no outrageous government conduct where the government paid a contingency fee to a confidential informant); *United States v. Winslow*, 962 F.2d 845 (9th Cir. 1992) (finding no outrageous government conduct where the government used an informant who arranged an out-of-state trip, directed purchase of bomb components, and was paid $90,000 for participation in investigation); *United States v. Slaughter*, 891 F.2d 691, 695-96 (9th Cir. 1989) (finding no outrageous government conduct where the government used an informant to build a personal relationship with defendant and persuaded him to sell cocaine); *United States v. Simpson*, 813 F.2d 1462, 1464-71 (9th Cir. 1987) (finding no outrageous government conduct where the FBI continued to use woman as informant who provided defendant sexual favors to lure target into selling heroin); *United States v. Emmert*, 829 F.2d 805 (9th Cir. 1987) (finding no outrageous government conduct where FBI approached college student and offered a $200,000 finder's fee for securing cocaine supply); *United States v. Wiley*, 794 F.2d 514, 516 (9th Cir. 1986) (finding no outrageous government conduct where government provided marijuana for drug transaction); *United States v. Reynoso-Ulloa*, 548 F.2d 1329 (9th Cir. 1977) (finding no outrageous government conduct where threats and physical violence prevented defendant from exiting criminal enterprise).

The Ninth Circuit has identified several factors for addressing alleged outrageous government conduct in a sting operation: (1) the known criminal characteristics of the defendant; (2) the individualized suspicion of the defendant; (3) the government's role in creating the crime of conviction; (4) the government's encouragement of the defendant to commit the offense; (5) the nature of the government's participation in the offense; and (6) the nature of the crime being pursued and necessity for the actions taken in light of the nature of the criminal enterprise at issue. *United States v. Black*, 733 F.3d 294, 303 (9th Cir. 2013). The Court will consider each of these factors.

First, the government asserts that Defendant had previously attempted to purchase a sex slave, admitted to owning a sex slave in the past, and previously was convicted of false imprisonment. Doc. 75 at 11. Defendant counters that the government has no proof of his supposed training facility in Nevada or that he actually bought and sold slaves. Doc. 97 at 6. But the government is simply alleging that Defendant admitted these facts, admissions which provide some evidence of Defendant's criminal characteristics. Defendant also argues that one conviction, more than 25 years ago, is not enough to show a predisposition to the crime. *Id.* But the government is not alleging that Defendant's prior conviction for false imprisonment alone reveals his criminal characteristics. The conviction combined with his admissions support the government's position. Finally, Defendant argues that his response to the FBI solicitation does not show a predisposition to commit crime. Doc. 97 at 13. The Court does not agree. Defendant's response to the advertisement and his expressed interest in acquiring a non-consensual sex slave support his predisposition to the crime. This factor weighs against finding outrageous government conduct.

The second factor is the individualized suspicion of the defendant. *Black*, 733 F.3d at 303. Defendant was identified on the basis of his prior communications with the Malaysian organization. He was not contacted without a basis for believing he engaged in such criminal conduct. Moreover, during the sting operation Defendant admitted that he had previously engaged in the non-consensual sex trade. Doc. 75 at 11. This factor

weighs against finding outrageous government conduct.

The third factor is the government's role in creating the crime of conviction. *Black*, 733 F.3d at 303. In *Black*, the court held that although the government had an initial role in creating the crime, the defendants joined the conspiracy and took an independent role in planning the crime. This factor therefore did not weigh against the government. *Id*. at 307. The same is true here. Although Defendant argues that the government initiated the idea of selling a sex slave and invited him to come to Phoenix, Defendant readily expressed an interest in purchasing a woman, inquired after the auction whether any women were left, and planned the use of Scopolamine. Doc. 75 at 13. He also drove to Phoenix and provided restraints, video equipment, and a sex toy. Because Defendant took an independent role in creating the crime, this factor weighs in favor of the government.

The fourth factor is the government's encouragement of the defendant to commit the offense. *Black*, 733 F.3d at 303. In one case, *Hudson*, the government targeted impoverished individuals by encouraging them to participate in a robbery where the expected profits were estimated at $600,000. *United States v. Hudson*, No. 2:13-cr-00126, 2014 WL 960860 at *10 (C.D. Cal 2014). The district court determined that targeting impoverished individuals by offering them huge profits constituted substantial encouragement. *Id*. In a different case, the Ninth Circuit held that offering large sums of money was not outrageous because the individuals were not impoverished and such sums are regular components of narcotics operations and necessary to make them credible. *Emmert*, 829 F.2d at 812.

The government argues that there was no coercion or pressure on Defendant to engage in the sex-trafficking crime, and that he had multiple opportunities to withdraw. Doc. 75 at 13. Defendant argues that one of the UCEs pressured him to go to the auction and join the criminal organization. Doc. 97 at 3. Defendant alleges that the UCEs offered to relieve his financial burdens and fund the expansion of his retraining facility. *Id*. Further, the UCEs implied that the auction had generated $500,000. *Id*. at 4.

Defendant argues that the promise to share the profits of such a venture constitutes substantial inducement. *Id.*

On balance, the Court finds that this factor weighs against a finding of outrageous conduct. Although the FBI did offer some financial inducement, it was not akin to offering hundreds of thousands of dollars to an impoverished person. Defendant suggests only that the UCEs talked of possible partnership. In addition, the UCEs gave Defendant opportunities to back out of this crime, informing him that the women were not participating voluntarily and, if he was seeking voluntary women, he should not contact them again. Defendant nonetheless expressed his strong interest ("I DO want to do this!!!!"), suggested new aspects of the crime such as kidnapping a "custom order," drove to Phoenix on his own, provided the Scopolamine and restraints on his own, and persisted in his communications. Although the government clearly provided the opportunity, the Court cannot conclude that its encouragement of Defendant induced his response or exceeded reasonable limits.

The fifth factor is the nature of the government's participation in the offense. *Black*, 733 F.3d at 303. The government's involvement extended over a period of approximately five months and primarily involved communications with Defendant. The government did not actually establish a criminal enterprise or provide Defendants with crime-related materials. As noted above, Defendant brought Scopolamine, restraints, and other items of his own volition. Doc. 75 at 15. This factor weighs against finding outrageous government conduct.

The sixth and final factor is the nature of the crime being pursued and the necessity for government action. *Black*, 733 F.3d at 303. This factor evaluates "the need for the investigative technique that was used in light of the challenges of investigating and prosecuting the type of crime being investigated." *Id.* at 309. The government notes that apprehending individuals in the sex slave trade is extremely difficult. Doc. 75 at 15. Defendant offers no counter argument. This factor weighs in favor of the government.

The six factors all weigh in favor of a determination that the government did not

engage in outrageous conduct.  The Court finds that the government conduct at issue was not "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Citro*, 842 F.2d 1149, 1152 (9th Cir. 1988).

      **D.**    **Profiling.**

Defendant alleges that the government engaged in profiling of what he calls "the fetish community," but this argument appears to be part of his entrapment and outrageous conduct arguments, both of which have been addressed above.

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 70) is **denied**. Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 8/28/2014.

Dated this 21st day of November, 2014.

_____
David G. Campbell
United States District Judge